UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Criminal Action No. 5: 17-135-DCR-4 |
| V. | ) ) | |
| MEGAN NICOLE SLONE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

# I.

This case presents an issue regarding application of the First Step Act of 2018 (hereafter, "the 2018 Act") to a subset of defendants who entered guilty pleas prior to the effective date of the 2018 Act but were not sentenced until after December 21, 2018. More specifically, the precise legal question concerns the date on which a conviction is deemed to be "entered" under Section 402(b) of the 2018 Act. For the reasons that follow, the undersigned concludes that, in this case, the defendant's conviction was "entered" on the date she acknowledged her guilt to the count of conviction. The guilty plea was accepted by the Court on that same date, without qualification. Because that date occurred before December 21, 2018, the defendant does not receive the benefits of the expanded safety-valve provision of the 2018 Act. However, another provision of the 2018 Act does apply and reduces the mandatory minimum term of incarceration from 240 months to 120 months.

**II.**

Defendant Megan Slone lived with co-Defendant Miguel Esparza and assisted him in distributing large amounts of fentanyl in the Eastern District of Kentucky during 2017. She pleaded guilty in April 2018 to conspiring to distribute 400 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1). [Record No. 55] The facts supporting Slone's guilt are outlined in paragraph 3 of her Plea Agreement. [Record No. 56] The parties agreed that:

(a) Beginning in August 2017 and continuing though December 2017, the defendant conspired with co-defendant Miguel Esparza, and with others, to distribute at least 1.2 kilograms but less than 4 kilograms of fentanyl. Based on information collected during the investigation, law enforcement personnel learned that co-defendants Gadiel Ortiz and Brian Hensley resided at East Court Street in Lawrenceburg, Kentucky. The defendant and co-defendant Miguel Esparza cohabited at an apartment at Leestown Road in Lexington.

(b) In August of 2017, a cooperating source (CS) advised DEA agents he/she had been historically provided with large quantities of heroin from Ciro Macias-Martinez under the direction of a Hispanic male who resided in Mexico nicknamed "Vato." After Macias-Martinez was arrested, investigators believed that co-defendant Gadiel Ortiz and others began to receive and distribute controlled substances at "Vato's" direction. Agents utilized the CS to purchase approximately 300 grams of fentanyl from co-defendants Ortiz, Hensley and Esparza. After a traffic stop of Ortiz and Hensley on December 5, 2017, and the seizure of an additional kilogram of fentanyl, law enforcement officers obtained a state search warrant for the residence of the defendant and co-defendant Miguel Esparza at Leestown Road in Lexington, Kentucky.

(c) When officers arrived to execute the warrant, both defendants were present in the residence. The warrant execution resulted in the seizure of approximately one and one-half kilograms of fentanyl. Approximately one kilogram of fentanyl was located in a closet containing primarily men's clothing. Digital scales and a quantity of U.S. currency were also located in the same closet.

(d) In a second closet, containing primarily women's clothing and accessories and primarily used by the defendant, officers located approximately one-half kilogram of fentanyl inside a tote organizer. The packaging was similar to that of the kilogram quantity located in the other closet, but had been opened.

A large plastic bag was located near the half-kilogram quantity, which appeared to contain several ounces of a controlled substance. The box for the digital scales found in the first closet was locate in the tote, along with U.S. currency and miscellaneous documents in the names of both the defendant and co-defendant Miguel Esparza. Included in those documents was a lease agreement for the apartment, which provided that the defendant and Esparza were the lessees of the residence. On a shelf in this same closet, a small bag containing a quantity of fentanyl was located and seized.

(e)     Also on December 5, 2017, a federal search warrant was executed at the residence of co-defendants Ortiz and Hensley at East Court Street in Lawrenceburg. A rifle and shotgun was [sic] located in the residence. During his interview with DEA agents, co-defendant Ortiz admitted that he had stored three kilograms of fentanyl in his residence during the conspiracy.

(f)     All of the controlled substances were tested and found to contain fentanyl. The total amount of fentanyl is approximately 3 kilograms. The defendant admits that she knowingly and voluntarily agreed with co-defendant Esparza to store fentanyl at their shared residence for distribution and that she knew that the quantity of fentanyl was at least 1.2 kilograms but less than 4 kilograms.

Paragraph 5 of the defendant's Plea Agreement outlines the parties' recommendations regarding the manner in which the defendant's guideline range for imprisonment will be calculated under the United States Sentencing Guidelines. It provides:

5.     Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a)     United States Sentencing Guidelines (U.S.S.G.), November 1, 2016, manual, will determine the Defendant's guidelines range.
(b)     Pursuant to U.S.S.G. §2D1.1(c)(4), the base offense level is 32 based on the amount of fentanyl (1.2 – 4 kilograms) attributable to the Defendant.
(c)     Pursuant to U.S.S.G. §2D1.1(b)(1), the United States' position is that a 2-level increase for possession of a firearm properly applies. The Defendant reserves the right to object to application of this enhancement.
(d)     Pursuant to § 2D1.1(b)(12), increase the base offense level by 2 levels because the defendant maintained a residence for the purpose of manufacturing or distributing a controlled substance.

> (e) Pursuant to U.S.S.G. §3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s [sic] timely notice of intent to plead guilty.

[Record No. 56, p. 4] Thus, the clear language of the Plea Agreement establishes that the proposed guideline calculations are not binding on the Court.

The guilty plea was accepted by the Court on April 13, 2018. In addition to confirming the accuracy of the facts outlined on paragraph 3 of the Plea Agreement as well as the non-binding nature of the parties' recommendations concerning the guideline calculations, Slone explained during the change-of-plea hearing her involvement in the conspiracy. She also confirmed that the government would be able to establish the elements of the offense charged in Count 1 of the Indictment if the matter proceeded to trial.[1]

It is also noteworthy that, prior to the change-of-plea hearing in April 2018, the United States filed a Notice of Prior Conviction in December 2017 pursuant to 21 U.S.C. § 851, indicating that she would be subject to an enhanced statutory punishment based on a prior state felony drug conviction. At the time the government filed this notice, 21 U.S.C. § 841(b) provided a mandatory minimum sentence of 20 years' imprisonment for an offense involving 400 grams or more of fentanyl when committed by a person who had a prior conviction for a "felony drug offense." This penalty provision was also addressed at length at the time Slone entered her guilty plea.

---

[1] Slone's sentencing was scheduled initially for July 13, 2018, but continued two times (to October 19, 2018, and later to March 1, 2019), at the parties' request.

**III.**

Slone's Presentence Investigation Report ("PSR") was initially disclosed to the parties on June 26, 2018. Through the PSR, the United States Probation Officer responsible for drafting the document assigned a Base Offense Level of 32, based on the drug quantity attributed to Slone. And after applying a two-level increase for maintaining a drug premises and a three-level decrease for acceptance or responsibility, the PSR recommends a Total Offense Level of 31.[2] The PSR also outlines Slone's criminal history. Although she has several convictions, it properly assigns three criminal history points to the defendant, placing her in Criminal History Category II. The conviction upon which the government's 851 notice is based in identified in paragraph 38 of the PSR. It states that Slone was arrested on May 1, 2013 and charged with trafficking in a controlled substance (opiates) and in the first degree. Because Slone violated the conditions of her bond, an additional count of interference with judicial administration was added. On March 5, 2014, Slone received a one-year sentence of imprisonment on both counts, which the Fayette Circuit Court suspended. Slone was then placed on unsupervised probation for three years. State court records indicate that Slone served a total of 54 days in custody prior to being sentenced.

Slone's Total Offense Level (31) and Criminal History Category (II) resulted in a guideline range of 121 to 151 months of imprisonment. However, at the time her PSR was disclosed (June 26, 2018), and at the time of the first two sentencing dates, she faced a

---

[2]    The PSR does not contain an enhancement for possession of a firearm under United States Sentencing Guidelines § 2D1.1(b)(1) and the United States has not advocated for that enhancement, notwithstanding its earlier-stated intention as outlined in paragraph 5 (c) of the parties Plea Agreement.

mandatory minimum term of 240 months because of the qualifying drug conviction under 21 U.S.C. §§ 841(b)(1)(A) and 851.

But as noted in footnote 1 above, Slone's sentencing hearing was continued from the original date of July 13, 2018 to October 19, 2018. A second continuance was later granted at the request of the parties to March 1, 2019. Prior to the sentencing hearing being held, Congress passed and President Trump signed legislation affecting mandatory minimum terms of incarceration. To reflect these changes, the probation officer responsible for preparation of Slone's initial PSR submitted a Second Addendum after December 21, 2018. Because Slone did not serve more that 12 months in connection with her prior felony drug offense for trafficking in a controlled substance, the probation officer determined that she was no longer subject to the mandatory minimum term of incarceration of 240 months. More specifically, the Second Addendum states as follows:

> Pursuant to the First Step Act, the defendant's penalty carries a minimum term of imprisonment of 10 years and the maximum term is life, pursuant to 21 U.S.C. § 841(b)(1)(A). The guideline term of supervised release is 121 months to 151 months.
>
> With regard to supervised release, the Court must impose a term of supervised release of at least five years, pursuant to 21 U.S.C. § 841(b)(1)(A). The guideline term of supervised release is five years, pursuant to USSG 5D1.2(c).
>
> The statutory provisions with regard to the fine is not more than $10,000,000, pursuant to 21 U.S.C. §841(b)(1)(A). The fine guideline range for this offense is $30,000 to $10,000,000.
>
> The First Step Act also expands the applicability of the Safety Valve by amending 18 U.S.C. §3553(f). ***However, the Safety Valve amendment only applies to convictions entered on or after December 21, 2018. The defendant's conviction was entered on April 13, 2018.***

(Emphasis added.)

The United States objected to the probation officer's conclusion that the statutory safety valve, as outlined on 18 U.S.C. § 3553(f) and expanded by the 2018 Act, does not apply to Slone. It contends that the date the judgment will be entered (presumably at some point after the current March 1, 2019 sentencing date) controls, rather than the date that Slone entered her guilty plea and the undersigned accepted it on April 13, 2018. The probation officer addressed the United States' objection through a Third Addendum to the PSR. It states:

> **Response:** It is the Probation Office's position that the defendant is ineligible for safety-valve consideration under the First Step Act. The plain text of the applicability provision of the First Step Act in Section 402(b) provides, "[T]he amendments made by this section shall apply only to a conviction entered on or after the date of the enactment of the Act." The Probation Office offers that the term "conviction" means the date of the entry of the plea if the plea is fully accepted by the Court, and the Court adjudged her guilty of Count One of the Indictment. As no additional wording in Section 402(b) of the First Step Act directs otherwise, the Probation Office believes that the term "conviction" is synonymous with a finding of guilt.
>
> Also, it is the Probation Office's position that the plain text of Section 402(b) did not seek to make this provision applicable to those cases still pending sentencing after a finding of guilt. Congress made this distinction in Section 401(c) with regard to the applicability of the First Step Act to those cases involving the reduction of certain mandatory minimum sentences and those sentences enhanced by prior drug offenses. Section 401(c) provides, "This section, and the amendments made by this section, shall apply to an offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Here, Congress identified that those amendments ought to apply to cases pending sentencing after the enactment of the First Step Act. It is the position of the Probation Office that Congress did not expressly make the same provisions for the applicability of the safety-valve amendments. For the reasons stated above, it is the Probation Officer's position that USSG §2D1.1(b)(17) (two-level reduction for being safety-valve eligible) does not apply as Slone is ineligible for safety-valve consideration under The First Step Act.

The United States' formal objection to the PSR was filed February 23, 2019. [Record No. 100] It contends that if the newly-expanded statutory safety valve is applied, Slone's

guideline range for imprisonment becomes 97 to 121 months. [*Id.*] The Court assumes Slone agrees with the government's position on this issue.

IV.

The 2018 Act was signed into law and became effective on December 21, 2018. One portion of the 2018 Act restricts the types of crimes that qualify as a prior conviction under § 841(b). Pub. L. No. 115-391. Pursuant to Section 401 of the 2018 Act, a defendant must have been convicted of a "serious drug felony" or a "serious violent felony" to trigger an enhanced penalty under § 841(b). In relevant part, a prior conviction does not constitute a serious drug felony under the 2018 Act unless the defendant served a term of imprisonment of more than 12 months and the offender's release from imprisonment was within 15 years of the commencement of the instant offense. Here, it is undisputed that Slone did not serve more than one year for her state-court felony drug conviction, so that conviction no longer triggers an enhanced penalty under § 841(b).

But Slone is still potentially subject to a mandatory minimum sentence. Under 21 U.S.C. § 841(b)(1)(A)(vi), a federal conviction involving 400 grams or more of a mixture or substance containing fentanyl requires a mandatory minimum term of imprisonment of at least 10 years. However, 18 U.S.C. § 3553(f) contains a "safety valve" which permits courts to sentence below the statutorily-required minimum in a limited group of cases. To qualify, a defendant must demonstrate: (1) that his or her criminal history points are sufficiently limited; (2) that he or she did not use violence or credible threats of violence or possess a dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injuries to any person; (4) the defendant was not a leader or organizer as defined under the sentencing guidelines, and was not engaged in a continuing criminal enterprise as defined in

Section 408 of the Controlled Substances Act; and (5) by the time of sentencing, the defendant has truthfully provided to the government all information he or she has concerning the offenses that were part of the course of conduct at issue. 18 U.S.C. § 3553(f).

Section 402 of the 2018 Act broadened the circumstances under which the safety valve applies with respect to statutory mandatory minimums. Prior to the 2018 Act, a defendant was not eligible for the statutory safety valve if he or she had more than one criminal history point under the applicable sentencing guidelines. But following the 2018 Act, a defendant can have up to a total of eight criminal history points.

The 2018 Act provides that a defendant is eligible for application of the statutory safety valve if he or she does not have:

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

In making this statutory determination, Section 4A1.1 of the United States Sentencing Guidelines Manual describes how criminal history points should be calculated. Section 4A1.1(a) indicates that three points are be added for each prior sentence of imprisonment exceeding one year and one month. Next, two points are added for each sentence of imprisonment of at least sixty days that is not counted in subsection (a). U.S.S.G. § 4A1.1(b). Finally, one point is added for each prior sentence not counted in subsection (a) or (b), up to a total of four points. §4A1.1(c).

Since one-point convictions are excluded under § 3553(f), as amended by the 2018 Act, a defendant could have four-one point convictions and two two-point convictions for non-

violent offenses and still qualify for the safety valve reduction. Likewise, a defendant could still qualify statutorily with four one-point convictions, a two-point nonviolent conviction, and two points for committing the instant offense while under a criminal sentence such as parole or supervised release. *See* Section 4A1.1(d).

In the present case, the government contends that Slone should benefit from the statutory safety valve and, therefore, should not be subject to the 10-year minimum term of incarceration mandated by 21 U.S.C. § 841(b)(1)(A)(vi). [Record No. 100] However, the amendments outlined in Section 402 of the FSA "apply only to a *conviction entered* on or after the date of enactment of [the 2018] Act." (Emphasis added.) § 402(b). As explained below, the date a conviction was entered can vary depending on the type of guilty plea entered by the defendant, the time it is accepted by the court, and according to who actually takes the guilty plea.

Here, Slone entered a valid guilty plea on April 13, 2018, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Civil Procedure and the Court: (i) accepted Slone's plea and (ii) made the relevant Rule 11 findings at the time of that change-of-plea hearing. Nothing was left to be done with respect to the conviction. And unlike the situation presented when a defendant enters a guilty plea pursuant to a binding plea agreement under Rule 11(c)(1)(C), Slone could not simply withdraw her guilty plea if the Court later rejected the parties' recommendations regarding the manner of calculating the guideline range of imprisonment. Likewise, Slone did not enter a guilty plea before a United States Magistrate Judge which was subsequently accepted by the district judge who ultimately imposed the sentence in her case. As a result, the undersigned concludes that her conviction was "entered" on April 13, 2018, as opposed to

either: (i) the date of the sentencing hearing or (ii) the date of entry of the Judgment and Commitment Order. Thus, she was convicted prior to the enactment of the 2018 Act.

But the government maintains that "conviction entered" is synonymous with the date the judgment is entered (which has not yet occurred in Slone's case). Recognizing that the government takes this position,[3] the Court deems it necessary to state its reasons for concluding that Slone is not eligible for relief under § 3553(f).

"[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary common meaning." *Mulder v. McDonald*, 805 F.3d 1342, 1346 (Fed. Cir. 2015) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Black's Law Dictionary defines a conviction as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." Alternatively, conviction is "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." (Black's Law Dictionary, 10th ed. 2014). And there is no indication that "conviction" has any other meaning within the 2018 Act.

In fact, had the drafters intended convicted, but not-yet-sentenced, defendants to come within the scope of Section 402, they surely were capable of expressing that intent. For example, Sections 401 and 403 apply "to any offense that was committed before the date of enactment of [the 2018] Act, *if a sentence for the offense has not yet been imposed as of such date of enactment.*" Therefore, reading the 2018 Act's sentencing reform provisions as a whole, substantive variations in language indicate a difference in meaning.

---

[3] The Court is mindful that, in rejecting the government's position, there is little likelihood that the issue will be fairly presented on appeal because both parties will advocate for the same result (that is, a reduced sentence based on application of an expanded safety valve). But that likelihood does not alter the Court's obligation to fairly address the issue or properly calculate the applicable guideline range.

Next, and contrary to the government's assertion, "conviction" is not synonymous with sentencing, but with adjudication of the defendant's guilt.[4] Because Slone was previously

---

[4] The Court has considered the effect of Rules 11(d) and 32(k) of the Federal Rules of Criminal Procedure on this issue but concludes that they do not alter the conclusion reached in this opinion.

Rule 32(k) outlines the matters which must be set forth in the judgment in a criminal case and the mechanics of entering the judgment. It provides in subparagraph (1) that, "[i]n the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty or otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it." This says nothing about determining the time at which a defendant's conviction is entered. Likewise, there is no indication in the legislative history of the 2018 Act that congress considered this rule of criminal procedure to be dispositive of the issue presented. Prior to this point in the proceedings in a criminal case, a defendant may *seek* to withdraw a guilty plea, but the showing which must be made is vastly different depending on the type of plea entered.

Rule 11(d) of the Federal Rules of Criminal Procedure outlines the manner in which a defendant may seek to withdraw a guilty plea. The showing that is required varies greatly depending on the nature of the plea (i.e., binding or non-binding) and the timing of its acceptance by the district court. Once a defendant enters a guilty plea of the type entered by Slone, the defendant does not have an absolute right to withdraw the plea. Instead, the defendant must demonstrate a "fair and just reason" for the withdrawal. Rule 11(d)(2)(B), Fed. R. Crim. P. *See also United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citing *United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001)). And this is more onerous than it sounds at first glance.

Rule 11(d)(2)(D) is designed so that a "hastily entered plea made with an unsure heart and confused mind" may be undone. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). But it does not permit a defendant to make a tactical decision to enter a plea, allow the court to accept it, and then withdraw the plea if the defendant believes he or she has made a bad choice. *Id.* Under this rule, a number of factors are evaluated in determining whether a moving defendant has demonstrated a "fair and just reason" for the withdrawal of a guilty plea after it has been accepted by the court. They include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

found to be guilty pursuant to a valid plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), she is not eligible for relief under § 3553(f), as amended by the 2018 Act. Had Slone entered a plea before a United States Magistrate Judge, the date the conviction was "entered" would be reflected by the date that the district judge accepted the magistrate judge's recommendation. Likewise, if the district court delayed acceptance of the guilty plea until the date of the sentencing hearing, the date the conviction was "entered" would be reflected by the later date of acceptance of the plea by the district court. And if a binding plea had been entered which allowed the defendant to withdraw the plea if sentenced outside the parties' agreement, then a different date may be dispositive of the issue. But those possibilities are not presented here. In this case, the relevant date the conviction was "entered" occurred on April 13, 2018.

Finally, the government contends that the Supreme Court's decisions in *Deal v. United States*, 508 U.S. 129, 131 (1993), and *Dorsey v. United States*, 567 U.S. 260, 276-77 (2012), favor equating "conviction entered" with the entry of final judgment. The Court has considered, but rejects, this argument. In *Deal*, the Court examined the meaning of "second or subsequent conviction" under 18 U.S.C. § 924(c)(1), which, at the time, provided a 20-year minimum sentence for second or subsequent convictions under that subsection. Deal had been sentenced to 105 years' imprisonment based on six § 924(c)(1) convictions in a single proceeding. He argued that § 924(c)(1) was ambiguous because "conviction" could mean

---

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). No one factor controls and the relevance of each varies based on "the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Id*. (citations omitted). Thus, unlike a binding Plea Agreement entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the hurdles which must be overcome to withdraw a guilty plea which has been accepted by the Court are substantial.

"either the return of a jury verdict of guilt or the entry of a final judgment on that verdict." 508 U.S. at 131. If the Court applied the latter interpretation, Deal would have had only one conviction and his sentence would have been vastly reduced.

The Court acknowledged that "conviction" can have various meanings, but fundamental principles of statutory construction require its meaning be determined from the context in which it is used. *Id.* at 132. Section 924(c) concerns the effect of convictions upon a sentence yet to be imposed, so the only sensible meaning is a finding of guilt by a judge or jury. *Id.* at 132-33. As previously explained, this Court has examined "conviction" in the context of the 2018 Act's sentencing reform provisions as a whole and concludes that conviction means a final adjudication of guilt.

In *Dorsey*, the Court examined the applicability of the Fair Sentencing Act of 2010, Pub. L. 111-220, to the post-Act sentencing of pre-Act offenders. 567 U.S. 260. The text of the Fair Sentencing Act does not provide express guidance regarding its applicability to pending cases. The Court examined a variety of factors to discern Congress's intent, and ultimately concluded that pre-Act offenders could be sentenced under the Act. *Id.* at 273-80. The government relies on one of those factors in particular in this case: the need to avoid unwarranted sentencing disparities. However, this policy consideration cannot override Congress's plain instructions regarding the 2018 Act's applicability.

For the reasons discussed above, it is hereby

**ORDERED** that the parties' objections to the defendant's Presentence Investigation Report [included but not limited to the United States' objection outlined in Record No. 100] is **OVERRULED**.

Dated: February 28, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge